UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | |
|---|---|
| FRED LUSK, as trustee and fiduciary, AND THE INDIANA STATE COUNSEL OF PLASTERERS AND CEMENT MASON PENSION FUND,<br>       Plaintiffs,<br><br>  vs.<br><br>AMERISERV FINANCIAL, INC., AMERISERV TRUST AND FINANCIAL SERVICES COMPANY, as administrator and fiduciary, BUILDING UNION INVESTMENT AND LOCAL DEVELOPMENT FUND OF INDIANA TRUST AND THE INDIANA STATES COUNCIL OF CARPENTERS PENSION FUND, a necessary party,<br>       Defendants, | 1:06-cv-1820-SEB-JMS |

**MOTION TO STAY PROCEEDINGS AND COMPEL ARBITRATION**

This matter comes before the Court on Defendants' Motion to Stay Proceedings and Compel Arbitration and in the Alternative, Precautionary Motion to Dismiss [Docket No. 10].  This is an ERISA action filed by Fred Lusk, as trustee and fiduciary, and the Indiana State Counsel of Plasterers and Cement Mason Pension Fund (collectively "Plaintiffs") for breach of ERISA fiduciary duties under the Federal Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et. seq. claiming that Defendants' waiver of accounting is void, pursuant to 29 U.S.C. § 1110(a), and that Defendants breached their fiduciary duty, pursuant to 29 U.S.C. § 1104(a).  Defendants

request that the Court stay this judicial action pending arbitration, in accordance with the express arbitration clause found in the Trust Agreement.  In the alternative, Defendants move to dismiss Plaintiffs' Complaint for failure to state a claim upon which relief can be granted.

As explained below, we GRANT Defendant's Motion to Stay Proceedings before the court based on our conclusion that arbitration of Plaintiffs' claims is required under the parties' agreement.  In addition, as Defendants note, because no claims have been brought against AmeriServ Financial, Inc. to which argument Plaintiffs make no response, we GRANT Defendants' Motion to Dismiss all claims against AmeriServ Financial, Inc.

### *Factual Background*

On approximately November 21, 2000, Defendant AmeriServ Trust and Financial Services Company ("AmeriServ") executed a Declaration of Trust establishing a separate fund designated as the BUILD Fund.  Compl. ¶ 5.  The BUILD Fund was created as a repository for various pension funds from several employee benefit plans for use in building projects, primarily in Indiana, that would utilize union labor exclusively.  Defs' Brief in Support at 2.  The Indiana State Council of Plasterers and Cement Masons Pension Fund ("Plasterers Fund") entered into a Revocable Trust and Participation Agreement ("Participation Agreement") with AmeriServ on or about June 29, 2001, thereby becoming participants in the BUILD Fund.  Compl. ¶ 9; Exhibit B.  As of the date this action was filed, seven Indiana Labor Funds had invested in the BUILD Fund.

2

Id.  The Plasterers Fund possessed approximately a 14.5% interest in the BUILD Fund. Compl. ¶ 11.

In 2005, after the failure of a proposed merger between the BUILD Fund and the BUILD Fund of America, along with lower than expected returns on investments, AmeriServ elected to implement a liquidation plan for the Fund's assests.  Defs' Brief in Support at 2.  The plan called for a gradual liquidation of the BUILD Fund's assets and the return of the proceeds to the various participants, including the Plasterers Fund. Compl. ¶ 12.  Unhappy with the proposed liquidation plan, however, four Indiana Labor Funds, not including the Plasterers Fund, provided AmeriServ with notices of redemption, thereby converting their investor status to "Disqualified Participant." Id. ¶ 13.  While the precise dates of these notices of redemption are unknown, it is believed that they all were submitted during 2005 and during the first quarter of 2006.  Id.  All four of these objecting Indiana Labor Funds signed agreements deferring their notices of redemption through December 31, 2006.  Id. ¶ 14.

When the four Labor Funds deferred their notices of redemption, the Plasterers Fund assumed that, if it were to file its own notice of redemption, it could withdraw its share of assets in the BUILD Fund immediately.  Id.  Thus, the Plasterers Fund attempted to become a "Disqualified Participant" of the BUILD Fund by filing is own notice of redemption on April 17, 2006.  Id.  Four days thereafter, on approximately April 21, 2006, Mr. L. Mordan, Senior Vice-President and Chief Operation Officer of AmeriServ, responded to the Plasterers Fund's request for financial status and operating procedures

information by forwarding a copy of the BUILD Fund's quarterly financial statements as well as certain descriptions of properties held in the fund. Id. ¶ 16. On April 22, 2006, Mordan requested that the Plasterers Fund defer its redemption request through December 31, 2006. Id. ¶ 15.

In late June or early July, representatives of AmeriServ stated during a telephone conference with representatives of the Plasterer's Fund that distributions of "cash" and "in kind" property from the BUILD Fund's liquidation would be made on a pro rata basis, rather than in date order according to when the BUILD Fund participants had given their notices of redemption. Id. ¶ 18. The Plasterers Fund believed such a pro rata liquidation process would place it on an equal footing with the four other funds who had preceded it in electing to pull out of the BUILD Fund. Id. On August 28, 2006, Mordan sent a letter to representatives of the Plasterers Fund which was interpreted by them to mean that, upon liquidation, both available cash and "in kind" property would be distributed on a pro rata basis according to the Labor Fund's percentage of investment in the BUILD Fund. Id. ¶ 21.

On September 14, 2006, Plasterer Fund representatives requested AmeriServ to countersign a proposal which would make clear the proposed pro rata liquidation procedures. Id. ¶ 22. On September 26, 2006, AmeriServ responded to the Plasterer Fund representatives' request, indicating that it would not countersign the proposal because the information provided on August 28, 2006, by Mordan did not apply in the case of a disqualified participant seeking immediate redemption. Id. ¶ 23. Instead,

according to AmeriServ, the deferrals of revocation executed by the four Indiana Labor Funds were to be rescinded, the effect of which would allow the Carpenters Fund, who gave first notice of redemption, to receive all the available cash, leaving none for the other Labor Funds.  Id.

At the Plasterers Fund's October 2006 Trustees meeting, a third-party consultant advised Plaintiffs that there had been a prior distribution to the Carpenters Fund from the BUILD Fund.  Id. ¶ 24.  Upon questioning of AmeriServ representatives by Plasterer Fund representatives, AmeriServ stated that the distribution to the Carpenters Fund occurred in October of 2005, before any other Indiana Labor Funds had given notice of redemption.  Id.  On November 28, 2006, AmeriServ requested that all Indiana Labor Funds who had given notice of redemption extend their previous deferrals past December 31, 2006, to December 31, 2007.  Id. ¶ 25.  On December 7, 2006, AmeriServ representatives informed the Plasterers Fund Board of Trustees that a distribution of liquidated assets would be made to the Carpenters Fund sometime prior to December 31, 2006, under the arrangement of redeeming assets based on the date order that the notices of redemption were received.  Id. ¶ 26.

This legal action constitutes the Plasterers Fund's attempt to prevent certain distributions to the Carpenters Fund by Defendants.  In response, Defendants request that the Court honor and enforce the broad arbitration clause contained in both the master Trust Agreement and Participation Agreements executed by the participating investors with the Trustee, AmeriServ.

>The master Trust Agreement for the BUILD Fund's arbitration clause states:
>
>**Section 9.11** <u>Arbitration</u>.  Any controversy among the parties arising out of or in connection with this Declaration of Trust will be finally determined by arbitration held in Johnstown, Pennsylvania, in accordance with the rules of the American Arbitration Association then in effect.  All hearings will be held on consecutive business days before a panel of three (3) arbitrators, to be selected by agreement among the parties.  The arbitrators shall be required to render an order within thirty (30) days after the close of the arbitration hearings.  The order of arbitration shall be the basis of a judgment in accordance with its terms in any court of competent jurisdiction.

See Complaint; Exhibit A.

A nearly identical clause appears in the Revocable Trust and Participation Agreement executed by the participating investors, including Plaintiffs,

>**Section 4.6** <u>Arbitration</u>.  Any controversy among the parties arising out of or in connection with this Revocable Trust and Participation Agreement will be finally determined by arbitration held in Johnstown, Pennsylvania, in accordance with the rules of the American Arbitration Association then in effect.  All hearings will be held on consecutive business days before a panel of three (3) arbitrators, to be selected by agreement among the parties.  The arbitrators shall be required to render an order within thirty (30) days after the close of the arbitration hearings.  The order of arbitration shall be the basis of a judgment in accordance with its terms in any court of competent jurisdiction.

See Complaint, Exhibit B.

These arbitration clauses notwithstanding, Plaintiffs commenced this lawsuit on December 22, 2006, alleging various breaches of fiduciary duty and demanding an immediate accounting of the BUILD Fund.  On January 26, 2007, Defendants filed the instant Motion to Stay Proceedings and Compel Arbitration and in the Alternative, a Precautionary Motion to Dismiss.

## *Legal Analysis*

### I.     *Standard of Review*

The Federal Arbitration Act, 9 U.S.C. §§ 1-16 (the "FAA"), governs arbitration in both state and federal courts.  See  Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 25 (1983).  Section two of the FAA is the primary substantive provision, which provides that an arbitration clause "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2 (2003); see Circuit City Stores, Inc. v. Adams, 532 U.S. 105 (2001) (upholding the enforceability of arbitration clauses under the FAA).  "The effect of Section two is to create a body of federal substantive law of arbitrability applicable to any arbitration agreement within the coverage of the [FAA]."  Moses H. Cone Memorial Hospital, 460 U.S. at 25; see Prima Paint Corp. v. Flood & Conklin Mfg. Corp., 388 U.S. 395 (1967).

The Supreme Court outlined three principles necessary to a determination of whether the parties intended to arbitrate grievances in the three cases known as the *Steelworkers Trilogy*.  See Steelworkers v. American Mfg. Co., 363 U.S. 564 (1960); Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574 (1960); Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593 (1960).  The first principle gleaned from the *Steelworkers Trilogy* is that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which it has not agreed so to submit." AT&T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 648

(1986); Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 580 (1960).  The second principle, which flows directly from the first, is that "the question of arbitrability. . . is undeniably an issue for judicial determination."  Id. at 649; see also Operating Engineers v. Flair Builders, Inc., 406 U.S. 487, 491 (1972); Atkinson v. Sinclair Refining Co., 370 U.S. 238, 241 (1962).  The third principle specifies that "a court is not to rule on the potential merits of the underlying claims."  Id. at 649.  "The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim."  Id. at 649.

     Further, "[w]hen deciding whether the parties agreed to arbitrate a certain matter, courts generally should apply ordinary state-law principles that govern the formation of contracts."  First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995).  The party opposing arbitration has the burden of demonstrating that the clause is unenforceable. See Shearson/Am. Express v. McMahon, 482 U.S. 220, 227 (1987).  However, "due regard must be given to the federal policy favoring arbitration."  Volt Info. Scis., Inc. V. Kaplan, 489 U.S. 468, 476 (1989).  Therefore, "[a]n order to arbitrate the particular grievances should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage."  AT&T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 650 (1986).

Under the FAA, if a party files suit in a federal court asserting a claim deemed arbitrable, the court must stay the proceeding until such arbitration has been had in accordance with the terms of the agreement.  See 9 U.S.C. § 3 (2003).  Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

## II.     *The Arbitration Clause*

The parties in the case at bar disagree as to whether Plaintiffs' claims are arbitrable under the arbitration clause contained in the master Trust Agreement and the Revocable Trust and Participation Agreement.  Plaintiffs' suit asserts that Defendants' waiver of accounting is void, pursuant to 29 U.S.C. § 1110(a), and that Defendants breached their fiduciary duty, pursuant to 29 U.S.C. § 1104(a).  Pls' Response at 12.  Plaintiffs contend that they cannot be bound by the arbitration provision found in both agreements because the dispute relates to statutory ERISA claims.  Id.  Plaintiffs argue that, though the Seventh Circuit has not yet decided whether arbitration clauses are enforceable for ERISA statutory claims, this court, based on the Ninth Circuit precedent, should hold that the court, not an arbitrator, should interpret ERISA claims.  See Graphic Communications Union v. GCIU-Employer Retirement Benefit Plan, 917 F.2d 1184, 1188 (9th Cir. 1990).

9

Furthermore, Plaintiffs assert that, if this case were to be stayed for arbitration, then the arbitrator would be required to decide whether the waiver of accounting provision is arbitrable. Pls' Response at 13. Plaintiffs assert that it is within the purview of the court to decide whether the waiver of accounting is arbitrable which issue must be decided before the case can be referred, if ever, to the arbitrator. Id. at 14.

Defendants contend that Plaintiffs' claims are all subject to the broad arbitration clause found in the master Trust Agreement and the Revocable Trust and Participation Agreement contracts. As such, the FAA, 9 U.S.C. §§ 1-16, controls Plaintiffs' claims because they are referable, by contract, to arbitration. Defs' Mem in Support at 6. Defendants further assert that the Supreme Court has long supported the federal policy favoring arbitration agreements, Id. at 5; see Moses H. Cone Memorial Hospital, 460 U.S. at 24 (1983), and that the broad language of the arbitration clause is all-encompassing; indeed, broader language than that found there would be almost impossible to draft. Id. at 4. As with other statutory claims, according to Defendants, ERISA disputes are subject to arbitration. Id. at 6; see Bird v. Shearson Lehman/American Express, Inc., 926 F.2d 116, 122 (2d Cir. 1991) *cert den.*; Challenger v. Local Union No. 1, 619 F.2d 645 (7th Cir. 1980). Defendants maintain that this court's decision to refer the entire dispute for arbitration as provided for in the parties' agreements will resolve the issue of whether the waiver of accounting is arbitrable. Defs' Mem. in Support at 5-6.

### A. *Scope of the Arbitration Clause*

"In order to determine whether the parties have agreed to submit this particular dispute to arbitration, we must turn to the specific language of the arbitration clause." International Brotherhood of Electrical Workers, Local 21 v. Illinois Bell Telephone Co., 2007 WL 1880205, at *5 (7th Cir. 2007). We look first at the provisions in the Revocable Trust and Participation Agreement to determine whether Plaintiffs agreed to be controlled by the terms of this contract. See Exhibit B; see also Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 580 (1960). In signing the Revocable Trust and Participation Agreement document, Plaintiffs clearly signaled their intention to be bound by the agreement and its terms. That said, we must next determine whether under this arbitration clause this particular dispute is subject to arbitration based on Plaintiffs' agreement because such an agreement "is a matter of contract and a party cannot be required to submit to arbitration any dispute which it has not agreed so to submit." AT&T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 648 (1986); Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 580 (1960).

The Revocable Trust and Participation Agreement's arbitration clause states in applicable part that "[a]ny controversy among the parties arising out of or in connection with this Revocable Trust and Participation Agreement will be finally determined by arbitration . . . ." See Exhibit B. Defendants contend that the specific phrase "any controversy" renders the scope of arbitration all-encompassing, arguing that broader

11

language is difficult to imagine and even more difficult to draft.  In, <u>Ross Brothers Construction Co. Inc. v. International Steel Services, Inc.</u>, the 7th Circuit recognized that the phrase, "any controversy," is the "broadest conceivable language" which thereby creates an all-encompassing arbitration clause.  (283 F.3d 867 (7th Cir. 2002)).

Like the court in <u>Ross Brothers</u>, we also find that the phrase, "any controversy," utilizes the broadest conceivable language in constructing an arbitration agreement.  And, "when a party to a contract, in this case [Defendants], uses the broadest conceivable language in drafting an arbitration clause, it must be concluded that the parties intended the scope of the submission to be unlimited." <u>Id.</u> at 876 (internal quotation omitted); <u>see also</u> <u>AT&T Technologies, Inc. v. Communications Workers of America</u>, 475 U.S. 643, 650 (1986) (A presumption to arbitrate "is particularly applicable where the clause is...broad.").

Accordingly, Plaintiffs have failed to establish that the arbitration clause at issue here is unenforceable and that any claim or dispute arising out of or connected with the Revocable Trust and Participation Agreement between Plaintiffs and Defendants is not within the scope of the arbitration clause.  The issue of the waiver of accounting as well as all issues regarding the possible payout to the Carpenters Fund are arbitrable disputes arising out of the Revocable Trust and Participation Agreement.

      B.    *Breach of Fiduciary Duty*

Defendants cite <u>Challenger v Local Union No. 1</u>, 619 F.2d 645 (7th Cir. 1980), to

establish that ERISA claims are arbitrable. In Challenger, the Plaintiff Plan Participant sued his plan alleging breaches of fiduciary duty. Id. at 648. The Seventh Circuit held that, in light of the absence of claims that trustees lacked good faith in applying their interpretation of the plan, the complaint failed to allege any violation by Defendant trustees of any duties imposed by ERISA, and thus, under the agreements mandatory arbitration provision, Plaintiff was required to submit the dispute to arbitration. Id. at 649. Plaintiffs attempt to distinguish the Challenger holding on the basis that it actually holds that arbitration clauses are unenforceable for ERISA statutory claims. We disagree with that characterization of Challenger's holding, ruling that Challenger is better understood to allow arbitration of ERISA statutory so long as ERISA § 410 (pertaining to breach of fiduciary duty) is not violated.[1]

Despite the broad scope of the arbitration agreement at issue here, Plaintiffs contend that this dispute is not arbitrable because the parties' claims include statutory ERISA claims. Even assuming that is true, the Supreme Court has held that "[s]tatutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 (1991). Moreover, "private agreements to arbitrate ERISA claims are enforceable." Maroney v. Triple "R" Steel, Inc., 2005 WL 1950404 (N.D. Ill. 2005); see also Shearson Lehman/American Express, Inc. v.

---

[1] ERISA § 410 (breach of fiduciary duty claims) as well any claim implicating §§ 409(a) and 410(a) of ERISA may indeed not be subject to arbitration, but no such claim is alleged in this case.

Bird, 493 U.S. 884 (1989) (vacating the Second Circuit's order refusing to compel arbitration of an ERISA dispute). Consequently, the Revocable Trust and Participation Agreement's broad arbitration clause does not exempt from its terms statutory ERISA disputes.

     Plaintiffs also allege that Defendants have breached their fiduciary duties by providing Plaintiffs with contradictory information, by planning to distribute assets to the Carpenters in violation of the terms of the Trust Agreement, and by failing to render to Plaintiffs an accounting. Pls' Response at 4-5. Specifically, Plaintiffs state that a representative from AmeriServ told the Trustees for the Plasterers that the BUILD Fund planned to distribute $4,500,000 in cash to the Carpenters by December 31, 2006. See Complaint ¶ 26. This contradicted earlier statements from AmeriServ's agents that the distribution would be made on a pro rata basis to all BUILD Fund participant funds. See Complaint ¶¶ 21-22, 24.

     We hold that this contradiction, assuming it was such, is insufficient to establish a breach of fiduciary duty because there is no evidence that these statements were not made in good faith. It is not alleged by Plaintiffs that trustees lacked a good faith belief in the correctness of their interpretation(s) of the Trust Agreement. Even if their interpretation(s) were subsequently deemed incorrect, trustees do not breach their fiduciary duties when they interpret the plan in good faith. Challenger, 619 F.2d at 649. Plaintiffs also assert that Defendants breached their fiduciary duty by planning to distribute BUILD Fund assets to the Carpenters in violation of the terms of the Trust

14

Agreement.  Again, "trustees do not breach their fiduciary duties by interpreting the plan in good faith, even if their interpretation is later determined to be incorrect."  Challenger, 619 F.2d at 649.  Finally, Plaintiffs allege a breach of fiduciary duty based on Defendants' failure to provide an accounting under section 404(a) of ERISA.  However, Ames v. American National Can Co., 170 F.3d 751 (7th Cir. 1999) and Faircloth v. Lundy Packing Co., 91 F.3d 648 (4th Cir. 1996) both hold that ERISA does not require the disclosure of documents beyond the formal legal documents governing the plan.  Thus, Plaintiffs' claim cannot be understood to establish a breach of fiduciary duty.  For all of these reasons, we are not persuaded that this action is not arbitrable based on Plaintiffs' theories of breach of fiduciary duty.

### *Conclusion*

As explicated above, we hold that Plaintiffs' claims are arbitrable pursuant to the Revocable Trust and Participation Agreement's arbitration clause.  Accordingly, we shall stay these judicial proceedings, pursuant to 9 U.S.C. § 3, until such arbitration has been completed in accordance with the terms of the parties' agreement but shall administratively close this case on the Court's docket pending completion of the arbitration.  Within thirty-days following a final decision in the arbitration proceedings, either (or all) party/ies may move to have this cause of action reopened on the Court's docket.  If no such motion to reopen is filed within the specified time frame, the case will be dismissed with prejudice.  Defendants' Motion to Stay Proceedings and Compel

Arbitration is <u>GRANTED</u> and Defendants' Motion to Dismiss all claims against AmeriServ Financial, Inc is also <u>GRANTED</u>.

IT IS SO ORDERED.

Date: 07/31/2007

*[signature]*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Charles L. Berger
BERGER & BERGER
cberger@bergerlaw.com

Jan S. Michelsen
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
jan.michelsen@odnss.com

Donald D. Schwartz
ARNOLD & KADJAN
dds3662@yahoo.com